UNITED STATES DISTRICT COURT

DISTRICT OF IDAHO

| | |
|---|---|
| IDAHO HOUSING AND FINANCE ASSOCIATION,<br><br>           Plaintiff,<br><br>vs.<br><br>GENWORTH MORTGAGE INSURANCE CORPORATION, et al.,<br><br>           Defendants. | No. 10-CV-367-AWT<br><br>**MEMORANDUM ORDER** |

Plaintiff Idaho Housing and Finance Association ("IHFA"), a mortgage lender, seeks a declaratory judgment that its insurer, defendant Genworth Mortgage Insurance Corporation ("Genworth"), waived the very provisions of the governing insurance policy that the insurer later invoked to rescind coverage. Now before the Court are the parties' cross-motions for summary judgment. The motions have been completely briefed, and the Court heard oral argument on September 13, 2011. Because the insurance policy contains an arbitration clause that refers IHFA's claims to arbitration, the Court dismisses the action without prejudice and denies both motions.

I.

Over the past three years, Genworth has rescinded insurance coverage on thirty-nine IHFA mortgage loans after the borrowers defaulted and IHFA submitted claims. Plaintiff's Statement of Facts ("PSOF") ¶¶ 61-63. Genworth provides two explanations

for the rescissions. First, it contends IHFA violated a policy provision requiring borrowers to "have a minimum $500 cash to close" each loan transaction. *Id*. ¶ 58. IHFA verified that each borrower had at least $500 available, but it did not require borrowers to actually contribute $500 to the transaction, as Genworth contends the "cash to close" provision commands. *Id*. ¶ 32.

As the second justification for the rescissions, Genworth asserts that IHFA used Fannie Mae's online Automated Underwriting System ("AUS") to vet prospective borrowers, but then, in violation of the insurance policy, IHFA approved loans even where the borrower did not meet all of the AUS requirements. *Id*. ¶ 58.

Genworth's dual justifications for the thirty-nine rescissions have widespread implications. IHFA followed these same two, rescission-prompting practices every time it issued a loan under an IHFA program called the "100% Loan" progam, which encompasses roughly 2,380 loans on which Genworth issued certificates of insurance. Reply Brief in Support of Plaintiff's Motion for Partial Summary Judgment ("Pltf Reply") at 3 n.2; PSOF ¶¶ 32, 35-37. Thus, the reasoning that led Genworth to rescind coverage on thirty-nine defaulted loans to date will also lead the insurer to reject future claims on any of the 2,380 loans issued under the 100% Loan program.

IHFA brought suit in Idaho state court upon a theory of waiver. The Complaint contends that Genworth learned long ago, between 2004 and 2007, about IHFA's purported violations of the "cash to close" and AUS requirements, but that, rather than rescind coverage at that time (before the housing bubble burst), Genworth happily continued accepting IHFA's premium payments until defaults picked up in 2008. Compl. ¶¶ 41, 53-54. The complaint asserts four causes of action: (1) a declaratory judgment claim, seeking a declaration that Genworth must pay claims on defaulted loans notwithstanding its objections over the "cash to close" and AUS requirements; (2) breach of contract, based on the insurance certificates that Genworth has already rescinded; (3) unjust enrichment; and (4) bad faith breach of insurance contract. It also asserts a fifth claim entitled "waiver and estoppel," but which does not expressly request any relief;

instead, it implicitly reasserts the first claim's request for a declaratory judgment that Genworth cannot base rescissions on the disputed provisions. *Id*. ¶¶ 66-109.  Genworth removed the action to this Court, invoking diversity jurisdiction under 28 U.S.C. §§ 1332 and 1441.

The insurance policy contains an arbitration clause that reads as follows:

> Unless prohibited by applicable law, all controversies or claims arising out of or relating to this Policy, or the breach, interpretation, or construction thereof, shall be settled by arbitration in accordance with the Title Insurance Arbitration Rules of the American Arbitration Association in effect on the date the demand for arbitration is made; *provided, however, that the Company or the insured both retain the right to seek a declaratory judgment from a court of competent jurisdiction on matters of policy interpretation.*

Stover Decl. Ex. B at 23 (emphasis added).  This arbitration clause is common to the mortgage insurance industry. *See Countrywide Home Loans, Inc. v. Mortg. Guar. Ins. Corp.*, 642 F.3d 849, 851 (9th Cir. 2011); *Beltway Capital, LLC v. Mortg. Guar. Ins. Corp.*, No. 11-376, 2011 WL 2066603, at *3 (D. Md. May 25, 2011); *Radian Ins., Inc. v. Deutsche Bank Nat'l Trust Co.*, 638 F. Supp. 2d 443, 447 (E.D. Pa. 2009).

After Genworth removed the case, the parties conferred and agreed to take their dispute to arbitration, but only after the Court exercises its authority under the arbitration clause to decide any "matter[] of policy interpretation" that the parties raise. *See* Revised Litigation Plan, Dkt. 7 at 2.

## II.

IHFA's motion is styled a motion for partial summary judgment, and given the clarity of the arbitration clause, it does not seek relief on any of the complaint's coercive causes of action (i.*e.*, breach of contract, bad faith breach, and unjust enrichment). Rather, IHFA seeks only a declaratory judgment on two points, which it contends constitute "matters of policy interpretation" within the meaning of the arbitration clause: (1) that Genworth waived the "cash to close" and AUS provisions of the insurance policy; and (2) that Idaho law governs interpretation of the insurance policy.  Pltf Reply at 2-3.

As for the first point, Genworth argues correctly that it must go to arbitration

1 because it falls outside the scope of "policy interpretation."

2 Under the Federal Arbitration Act, a contractual arbitration clause creates a
3 "presumption of arbitrability." *Comedy Club, Inc. v. Improv W. Assoc.*, 553 F.3d 1277,
4 1284 (9th Cir. 2009) (quoting *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S.
5 643, 650 (1986)). Courts must not adjudicate a dispute in the face of an arbitration clause
6 "unless it may be said with positive assurance that the arbitration clause is not susceptible
7 of an interpretation that covers the asserted dispute. Doubts should be resolved in favor
8 of coverage." *Id.*

9 State law governs the interpretation of the language of the arbitration clause itself.
10 *Id.* at 1284-85. Under Idaho law – which the policy identifies as the applicable law,
11 Stover Decl. Ex. B at 24, and which both parties agree applies – "[a] contract must be
12 interpreted according to the plain meaning of the words used if the language is clear and
13 unambiguous." *Hill v. Am. Family Mut. Ins. Co.*, 249 P.3d 812, 815 (Idaho 2011).

14 The dispute as to whether Genworth waived the "cash to close" and AUS
15 requirements is not a "matter of policy interpretation," under the plain meaning of that
16 contractual phrase. The dispute turns not on the language of the policy, but instead on the
17 course of the parties' conduct and performance of the policy – on whether Genworth
18 knew about IHFA's purported deviation from the policy requirements, and if so, when.
19 The dispute also turns on whether Genworth's knowledge of such deviations creates
20 waiver under Idaho law. *See Indus. Indem. Co. v. U.S. Fid. & Guar.*, 454 P.2d 956, 960
21 (Idaho 1969) ("[W]hen an insurance company or its agent has knowledge of facts which
22 would justify a [rescission] of the policy at the time the policy is issued, but takes no steps
23 to rescind it, the company waives the right later to insist upon those facts in avoidance of
24 the policy."). The issue has nothing to do with the meaning or interpretation of the policy
25 language.

26 As for the second point on which plaintiff seeks a declaration, nobody disputes that
27 Idaho law applies. *See* Defendants' Memorandum in Support of Motion for Summary
28 Judgment ("Def. Mem.") at 3. Therefore, there being no dispute on this point, no basis

- 4 -

1  exists for the Court to issue a declaratory judgement stating, as plaintiff desires, that
2  "Idaho Code section 41-1811 and Idaho appellate law regarding representations made on
3  an application for insurance are incorporated into and govern the Policy issued by
4  Genworth." Pltf Reply at 2. At arbitration the parties will undoubtedly contest the
5  *impact* of Idaho law upon the policy and Genworth's rescissions. They will dispute, as
6  they do at some length in their motion papers, whether the "cash to close" and AUS
7  requirements were "material" to the policy under Idaho law, and, as already mentioned,
8  whether Genworth's knowledge of and acquiescence in those violations gives rise to
9  waiver under Idaho law. But those issues of materiality, waiver, and of the general
10 intersection between Idaho law and the policy do not constitute "matters of policy
11 interpretation." *See Radian Ins.*, 638 F. Supp. 2d at 457 ("Whether [the insured party's
12 misrepresentations] were material – [whether they] influenced [the insurer's] decision to
13 insure the underlying loans or the premiums it demanded – is not a question of contract
14 interpretation but an assessment of the parties' motives and respective positions when
15 agreeing to the terms of the Policies."); *Beltway Capital*, 2011 WL 2066603 at *4
16 (granting motion to compel arbitration in mortgage insurance case where insured sought
17 declaratory judgment clarifying the applicable burden of proof under state law) ("[The
18 insured] has not asked the Court to interpret the meaning of any of the Policies'
19 provisions; it has only asked the Court to restate the law of contracts in North Carolina.").
20     Because the relief that IHFA seeks from this Court is only available at arbitration
21 under the insurance policy, the Court denies IHFA's motion for summary judgment and
22 dismisses its Complaint without prejudice.
23                                    III.
24     Genworth counterclaimed for a declaratory judgment, *see* Answer and
25 Counterclaim, Dkt. 9 at 20-23, and its motion for summary judgment seeks a declaration
26 on five points. Some of these points, like the declarations IHFA seeks, do not call for
27 policy interpretation. *Compare* Def. Mem. at 19 (seeking a declaration that the insurance
28 policy's General Underwriting Standards are material under Idaho law, such that "[h]ad

- 5 -

IHFA advised Genworth that it was not complying with such requirements, Genworth would not have issued certificates of insurance"), *with Radian Ins.*, 638 F. Supp. 2d at 457 (materiality is not a matter of policy interpretation). Other aspects of the requested declaration, however, do concern matters of policy interpretation. *See* Def. Mem. at 19 (seeking a declaration that "cash to close" means that the borrower must actually put "funds into the subject transaction").

These counterclaims, however, are no longer live. In response to the Court's order requesting supplemental briefing on whether it should exercise its discretion under the Declaratory Judgment Act to decline to adjudicate this action, *see* Briefing Order, Dkt. 48, Genworth decided to forego the counterclaims in this forum and pursue them instead at arbitration. Defendants' Response to Court's Briefing Order at 2 ("Genworth . . . requests [that] this Court dismiss the[] counterclaims without prejudice and order the parties to arbitration.").

Genworth's decision makes it unnecessary for the Court to decide whether to retain the case. Federal district courts may, in their discretion, decline to adjudicate declaratory judgment actions. *R.R. Street & Co. v. Transport Ins. Co.*, 2011 WL 3873804, at *5 (9th Cir. Sept. 2, 2011) (noting that district courts have "broad discretion" to "decline to entertain a federal declaratory judgment action" so long as such declination "furthers the Declaratory Judgment Act's purpose of enhancing judicial economy and cooperative federalism") (internal quotation marks omitted). When exercising this discretion, district courts consider "whether the declaratory action will settle all aspects of the controversy" and "whether the declaratory action will serve a useful purpose." *Gov't Emps. Ins. Co. v. Dizol*, 133 F.3d 1220, 1225 n.5 (9th Cir. 1998) (en banc) (internal quotation marks omitted). This action, in which the parties' arbitration clause hamstrings the Court's adjudicatory powers such that it cannot fully resolve this dispute, limiting it instead to questions of contract interpretation while forcing it to abstain from other, potentially dispositive questions of fact and law (such as waiver), would seem a good candidate for abstention. The case does not implicate federalism concerns – the

arbitration clause would hamstring the state court in the same way that it hamstrings this Court – but dismissal in favor of arbitration under the discretionary doctrine would certainly promote judicial efficiency by placing the entire dispute before one tribunal. *Cf. Radian Ins.*, 638 F. Supp. 2d at 458 (setting up hybrid court/arbitration proceeding, in mortgage insurance case with similar arbitration clause, by "retain[ing] jurisdiction to hear any questions of interpretation that arise in the arbitration"); *id*. at 460-61 ("The arbitrators may file requests for interpretation as they deem necessary or appropriate."). IHFA insists that the insurance policy grants the parties "an absolute right to have matters of policy interpretation heard by a court of competent jurisdiction." Plaintiff's Response to Briefing Order at 6. But it ignores that its contract does not alter the permissive nature of district court jurisdiction under the Declaratory Judgement Act. *See R.R. Street & Co.*, 2011 WL 3873804, at *5. However, because the parties present the Court with no justiciable claims – Genworth has decided to forego its policy interpretation claims, and IHFA's claims do not require policy interpretation and thus fall without the arbitration clause's exception – the Court need not decide how to employ its discretion under the Declaratory Judgment Act.

**IT IS ORDERED:**

1. The cross-motions for summary judgment are **DENIED.**
2. Genworth's motion to strike portions of the affidavit of Robert E. Reed, Jr., is **DENIED** as moot.
3. The complaint is **DISMISSED** without prejudice.
4. The counterclaims are **DISMISSED** without prejudice.
5. Pursuant to the Litigation Plan, the Court expects that the parties will now proceed to arbitration. Should it become necessary, either party may seek an order compelling arbitration.
6. The Clerk shall enter judgment accordingly, dismissing this action without prejudice.

7. Each party shall bear its own costs.

Dated: this 14th day of September, 2011.

                                       */s/ A. Wallace Tashima*
                                       A. WALLACE TASHIMA
                                       United States Circuit Judge
                                       Sitting by Designation